1  CHRISTOPHER CHIOU
Acting United States Attorney
2  Nevada Bar No. 14853
JESSICA OLIVA
3  Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
4  Las Vegas, Nevada 89101
Tel: (702) 388-6268
5  Fax: (702) 388-6418
jessica.oliva@usdoj.gov

6

*Attorneys for the United States of America*

7
                        UNITED STATES DISTRICT COURT
8                          DISTRICT OF NEVADA

9  UNITED STATES OF AMERICA,          Case No.: 2:22-cr-00027-GMN-NJK

10              Plaintiff,             CRIMINAL INFORMATION

11       vs.

12  KEYAWN LLOYD COOK, JR,            VIOLATION:
                                      18 U.S.C §§ 1343 and 3147 – Wire Fraud
13              Defendant.

14

15  THE UNITED STATES ATTORNEY FOR THE DISTRICT OF NEVADA CHARGES

16  THAT:

17                        **Background Allegations**

18  At all times relevant to the Information, unless otherwise stated:

19       1.   Defendant KEYAWN LLOYD COOK, JR. ("COOK") was a United States

20  citizen, residing in Las Vegas, Nevada.

21       2.   Defendant COOK was indicted in the federal District of Nevada on

22  December 4, 2019 for felony charges alleging violations of Attempted Interference with

23  Commerce by Robbery (18 U.S.C. § 1951) and Brandishing a Firearm in Furtherance of

24

                                        1

1   the Crime of Violence (18 U.S.C. § 924(c)(1)(A)(ii)) in case no. 2:19-CR-00313-GMN-NJK.

2   Defendant COOK entered a guilty plea to the § 1951 charge on May 26, 2021.

3          3.      Institution 1 was a community development institution headquartered in

4   Bedford, Texas. Institution 1 participated as a lender in the Paycheck Protection Program.

5                        *Background Regarding the Paycheck Protection Program*

6          4.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a

7   federal law enacted in or around March 2020 and is designed to provide emergency

8   financial assistance to the millions of Americans who are suffering the economic effects

9   caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was

10  the authorization of up to $349 billion in forgivable loans to small businesses and sole

11  proprietorships for job retention and certain other expenses, through a program referred to

12  as the Paycheck protection Program ("PPP"). Subsequent legislation provided additional

13  funding for the PPP and extended its duration. Businesses and eligible individuals could

14  apply for PPP loans through May 31, 2021.

15         5.      In order to obtain a PPP loan, a qualifying business, independent

16  contractor/self-employed individual, or sole proprietorship was required to submit a PPP

17  loan application signed by an authorized representative of the business. The PPP loan

18  application required the applicant (through its authorized representative) to acknowledge

19  the program rules and make certain affirmative certifications in order to be eligible to obtain

20  the PPP loan. In the PPP loan application, the applicant (through its authorized

21  representative) was required to state, among other things, its: (a) average monthly payroll

22  expenses; and (b) number of employees. (Applicants who did not have employees and who

23  filed an IRS Form 1040, Schedule C could report gross income instead of payroll.) These

24  figures were used to calculate the amount of money the applicant was eligible to receive

1   under the PPP. In addition, businesses or sole proprietorships applying for a PPP loan were

2   required to provide documentation showing their eligibility and qualifying payroll amount.

3         6.     A participating financial institution (the lender) processed a PPP loan

4   application. If the lender approved a PPP loan application, it funded the PPP loan using its

5   own monies, which the Small Business Administration ("SBA") guaranteed 100%. If the

6   lender made a PPP loan to the applicant, the SBA paid the lender a processing fee, which

7   was calculated based on the amount of the loan. The lender transmitted information to the

8   Small Business Administration in the course of processing the loan data from the

9   application, including information about the borrower, the total amount of the loan, and the

10  listed number of employees. The SBA oversees the PPP, which has authority over all loans.

11  Over 5,000 lending institutions, mostly banks and credit unions, have participated in the

12  PPP.

13        7.     The business or individual receiving the PPP loan proceeds must spend the

14  funds on certain permissible expenses, such as payroll costs, interest on mortgages, rent, and

15  utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if

16  the loan proceeds are spent on permissible expense items within a designated period of time

17  and uses a specified portion of the PPP loan proceeds on payroll expenses. When a PPP

18  loan is forgiven, the SBA pays the lender the amount of the forgiven interest and principal.

19        *Background Regarding the Economic Injury Disaster Loan Program*

20        8.     The Economic Injury Disaster Loan ("EIDL") Program is a SBA program

21  that provides low-interest financing to small businesses, renters, and homeowners in

22  regions affected by declared disasters.

23        9.     Another source of relief provided by the CARES Act was the authorization

24  for the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing

1  substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES

2  Act authorized the SBA to issue advances of up to $10,000 to small businesses within three

3  days of applying for an EIDL. The amount of the advance was determined by the number

4  of employees that the applicant certified it had.  The advances did not have to be repaid.

5      10.    In order to obtain an EIDL and advance, a qualifying business is required to

6  submit an application to the SBA and provide information about its operations, such as the

7  number of employees, gross revenues for the 12-month period preceding the disaster, and

8  cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for

9  COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant

10 must also certify that all the information in the application is true and correct to the best of

11 the applicant's knowledge.

12      11.    EIDL applications are submitted directly to the SBA and processed by the

13 agency with support from a government contractor, Rapid Finance, through a server in Des

14 Moines, Iowa. The amount of the loan, if the application was approved, was determined

15 based, in part, on the information provided by the application about employment, revenue,

16 and cost of goods, as described above. Any funds issued under an EIDL or advance are

17 issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave,

18 production costs, and business obligations, such as debts, rent, and mortgage payments.  If

19 the applicant also obtained a loan under the PPP, the EIDL funds cannot be used for the

20 same purpose as the PPP funds.

21 ///

22 ///

23 ///

24 ///

4

## COUNT ONE
### Wire Fraud
### (18 U.S.C §§ 1343 and 3147)

### Scheme to Defraud

12.     Beginning in or around April 8, 2020 and continuing until in or around July 12, 2021, within the state and federal district of Nevada and elsewhere,

KEYAWN LLOYD COOK, JR.

defendant herein, while on pretrial release in *United States v. Keyawn Lloyd Cook, Jr.*, Case No. 2:19-CR-00313-GMN-NJK, and having been notified of the potential effect of committing a felony offense while on pretrial release, devised, intended to devise, and participated in a scheme and artifice to defraud the SBA and Institution 1 and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme to Defraud

13.     It was the purpose of the scheme for COOK to unjustly enrich himself by fraudulently obtaining EIDL and PPP loan proceeds by means of false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Scheme to Defraud

14.     It was part of the scheme that from on or about April 8, 2020 through until at least July 12, 2021, COOK submitted at least four applications for EIDL funds and at least one application for a PPP loan. COOK submitted these applications electronically from Clark County, Nevada, causing wire communications to be transmitted across state lines. In order to qualify for these loans, COOK made and cause to be made materially false and fraudulent statements, including that he was the sole proprietor of several companies which did not in fact exist, false revenue amounts for each of those non-existent companies, and—

1   for the EIDL applications—a false number of employees of those non-existent companies.

2   In each of these five applications, COOK falsely certified that he was not presently under

3   indictment.

4          15.    COOK also provided fake documentation in order to support the April 7,

5   2021 PPP loan application: COOK attached a falsified Chime Spending Account Statement

6   which purported to show that he received deposits totaling $5,800 during February 2020.

7   However, this account statement was not real; COOK had no activity in this account prior

8   to December 2020.

9          16.    The PPP loan was approved. On May 20, 2021, Institution 1 deposited

10  $10,415 as the proceeds of this loan into a Chime Spending account controlled by COOK.

11         17.    With respect to the EIDL applications, Defendant intended to obtain at least

12  $50,000 through an April 8, 2020 application, $10,000 through an October 7, 2020

13  application, $10,000 through a December 31, 2020 application, and $24,000 through a July

14  12, 2021 application. The SBA did not, however, fund these loans.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

## The Charged Wire Communication

18.    On or about April 8, 2020, in the State and District of Nevada and elsewhere, COOK, for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, that is, an Economic Injury Disaster Loan application electronically transmitted by COOK from Nevada to the SBA outside of Nevada, in violation of Title 18, United States Code, Sections 1343 and 3147.

DATED:  this 1st day of February, 2022.

CHRISTOPHER CHIOU
Acting United States Attorney

_/s/ Jessica Oliva_____
JESSICA OLIVA
Assistant United States Attorney