1 CHRISTOPHER CHIOU
Acting United States Attorney
Nevada Bar No. 14853
2 JESSICA OLIVA
KIMBERLY FRAYN
3 Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
4 Las Vegas, Nevada 89101
Tel: (702) 388-6336
5 jessica.oliva@usdoj.gov
kimberly.frayn@usdoj.gov
6



7 *Attorneys for the United States of America*

8              **UNITED STATES DISTRICT COURT**
                **FOR THE DISTRICT OF NEVADA**
9

10 UNITED STATES OF AMERICA,          No. 2:22-cr-00027-GMN-NJK

11              Plaintiff,

12                  v.                **Plea Agreement for Defendant**
                                      **Keyawn Lloyd Cook, Jr. Pursuant to**
13 KEYAWN LLOYD COOK, JR.,            **Fed. R. Crim. P. 11(c)(1)(A) and (B)**

14              Defendant.

15

16         This plea agreement between Keyawn Lloyd Cook, Jr. ("defendant") and the United

17 States Attorney's Office for the District of Nevada (the "USAO") sets forth the parties'

18 agreement regarding the criminal charges referenced herein and the applicable sentences, fines,

19 and restitution in the above-captioned case. This agreement binds only defendant and the USAO

20 and does not bind the district court, the U.S. Probation Office, or any other federal, state, local,

21 or foreign prosecuting, enforcement, administrative, or regulatory authorities. This agreement

22 does not prohibit the USAO or any agency or third party from seeking any other civil or

23 administrative remedies, including administrative forfeiture or civil forfeiture *in rem* actions,

24 directly or indirectly against defendant or defendant's property.

1    This agreement becomes effective upon signature by defendant, defendant's counsel, and

2    an Assistant United States Attorney.

3                              **I. DEFENDANT'S OBLIGATIONS**

4         1.    Defendant agrees to:

5              a.    Give up the right to indictment by a grand jury and, at the earliest

6    opportunity requested by the USAO and provided by the Court, appear and plead guilty to a

7    one-count information in the form attached to this agreement as Exhibit A or a substantially

8    similar form, which charges defendant with wire fraud in violation of 18 U.S.C. §§ 1343 and

9    3147.

10             b.    Stipulate to the facts agreed to in this agreement;

11             c.    Abide by all agreements regarding sentencing contained in this agreement;

12             d.    Not seek to withdraw defendant's guilty plea once it is entered;

13             e.    Appear for all court appearances, surrender as ordered for service of

14   sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter;

15             f.    Not commit any federal, state, or local crime;

16             g.    Be truthful at all times with the U.S. Probation and Pretrial Services Offices

17   and the Court;

18             h.    Before and after sentencing, upon request by the Court, the USAO, or the

19   Probation Office, provide accurate and complete financial information, submit sworn

20   statements, and/or give depositions under oath concerning defendant's assets and defendant's

21   ability to pay. As part of the required disclosure, defendant agrees to provide any and all

22   financial information and authorizations requested by the Probation Office for preparation of the

23   Presentence Report. Defendant further agrees that, upon filing of this agreement, the USAO is

24   authorized to obtain defendant's credit report. Defendant will also complete a financial form

1  provided by the USAO, to include all supporting documentation, and return it to the USAO

2  within three (3) weeks from entry of the plea. Defendant agrees that the district court may enter

3  any order necessary to effectuate or facilitate disclosure of defendant's financial information;

4             i.       To facilitate payment of any fine, restitution, or assessment, surrender

5  assets defendant obtained directly or indirectly as a result of defendant's crimes. Defendant

6  agrees to voluntarily release funds and property under defendant's control or in which defendant

7  has any property interest, before and after sentencing, to pay any fine or restitution identified in

8  this agreement, agreed to by the parties, or ordered by the Court; and

9             j.       Defendant agrees that restitution shall be ordered due and payable in full

10  immediately after the judgment is entered, and that the full amount of any restitution ordered is

11  subject to immediate enforcement and collection by the USAO or defendant's victims, or both.

12  Defendant agrees that any schedule of payments entered by the district court is a schedule of the

13  minimum payment due and does not prohibit or limit the methods by which the USAO may

14  immediately enforce and collect the judgment in full. Defendant acknowledges that restitution

15  may not be discharged, in whole or in part, in any present or future bankruptcy proceeding.

16                              **II. THE USAO'S OBLIGATIONS**

17      2.      The USAO agrees to:

18             a.       Stipulate to facts agreed to in this agreement;

19             b.       Abide by all agreements regarding sentencing contained in this agreement;

20             c.       At sentencing, provided that defendant demonstrates an acceptance of

21  responsibility for the offense up to and including the time of sentencing, recommend a two-level

22  reduction in the applicable sentencing guidelines offense level, pursuant to USSG § 3E1.1, and

23  move for an additional one-level reduction if available under that section; and

24

d.      Not bring any additional charges against defendant arising out of the factual basis set forth in this agreement. However, the USAO reserves the right to prosecute defendant for (a) any crime of violence as defined by 18 U.S.C. § 16; and (b) any criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371). Defendant agrees that the district court at sentencing may consider any uncharged conduct in determining the applicable sentencing guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

### III. ELEMENTS OF THE OFFENSE

3.      Count One: The elements of wire fraud under 18 U.S.C. § 1343 are as follows:

First:          Defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises or omitted facts.

Second:      The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property.

Third:         Defendant acted with the intent to defraud, that is, the intent to deceive and cheat.

Fourth:       Defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

See Ninth Circuit Model Criminal Jury Instruction 8.124 (rev. June 2021).

4.      The elements for an enhanced penalty for committing an offense while on release, in violation of 18 U.S.C. § 3147, are:

a.      The defendant was released pursuant to the Bail Reform Act of 1966;

b.      The defendant was notified of the effect of committing an offense while on release; and

c.      The defendant committed a federal felony offense while on release.

*See* 18 U.S.C. § 3147.

## IV. CONSEQUENCES OF CONVICTION

5.      <u>Maximum Statutory Penalties</u>:

a.      Defendant understands that the statutory maximum sentence the district court can impose for a violation of 18 U.S.C. § 1343 as charged in Count One, is: 20 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

b.      The maximum additional penalty for committing a felony while on release in violation of 18 U.S.C. § 3147 is a 10-year prison sentence. *See* 18 U.S.C. § 3147(1). A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

c.      Defendant understands, therefore, that the total maximum sentence for the offense to which defendant is pleading guilty is: 30 years of imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $100.

6.      <u>Restitution</u>: Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty. Defendant agrees

that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is approximately $12,967.07, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7. <u>Parole Abolished</u>: Defendant acknowledges that defendant's prison sentence cannot be shortened by early release on parole because parole has been abolished.

8. <u>Supervised Release</u>: Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9. <u>Factors under 18 U.S.C. § 3553</u>: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence limits the district court's discretion in determining defendant's sentence.

10. <u>Potential Collateral Consequences of Conviction</u>: Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

6

1  rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the

2  right to serve on a jury. Defendant understands that once the district court accepts defendant's

3  guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.

4  Defendant understands that the conviction in this case may also subject defendant to various

5  other collateral consequences, including but not limited to revocation of probation, parole, or

6  supervised release in another case and suspension or revocation of a professional license.

7  Defendant understands that unanticipated collateral consequences will not serve as grounds to

8  withdraw defendant's guilty plea.

9      11.    Potential Removal/Deportation Consequences of Conviction: Defendant

10 understands that, if defendant is not a United States citizen, the felony conviction in this case

11 may subject defendant to removal, also known as deportation, which may, under some

12 circumstances, be mandatory; denial of citizenship; and denial of admission to the United States

13 in the future. The district court cannot advise defendant fully regarding the immigration

14 consequences of the felony conviction in this case, but defendant's attorney has advised him

15 about the deportation risks of his guilty plea. Defendant understands that unexpected

16 immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

17                          **V. FACTUAL BASIS**

18     12.    Defendant admits that defendant is, in fact, guilty of the offense to which

19 defendant is agreeing to plead guilty. Defendant acknowledges that if defendant elected to go to

20 trial instead of pleading guilty, the USAO could prove defendant's guilt beyond a reasonable

21 doubt. Defendant further acknowledges that defendant's admissions and declarations of fact set

22 forth below satisfy every element of the charged offense. Defendant waives any potential future

23 claim that the facts defendant admitted below are insufficient to satisfy the elements of the

24

7

1    charged offense. Defendant admits and declares under penalty of perjury that the facts set forth

2    below are true and correct:

3              a.       Defendant is a United States citizen and has resided in Las Vegas, Nevada

4    since at least July 2019.

5              b.       Institution 1 is a community development institution headquartered in

6    Bedford, Texas. Institution 1 participated as a lender in the Paycheck Protection Program.

7              c.       On December 4, 2019, Defendant was indicted in the District of Nevada

8    for Attempted Interference with Commerce by Robbery (18 U.S.C. § 1951) and Brandishing a

9    Firearm in Furtherance of the Crime of Violence (18 U.S.C. § 924(c)(1)(A)(ii)) in case no. 2:19-

10   CR-00313-GMN-NJK. Both charges are felony charges.

11             d.       On December 13, 2019, Defendant appeared before a Magistrate Judge for

12   the District of Nevada in Las Vegas, where he was advised of the charges against him, stated that

13   he understood those charges, and entered a plea of not guilty. The Court released Defendant

14   pursuant to the Bail Reform Act of 1966 on a personal recognizance bond with conditions.

15             e.       Defendant's appearance bond expressly advised him that "while on release,

16   if you commit a federal felony offense the punishment is an additional prison term of not more

17   than ten years . . . . This sentence will be consecutive (i.e., in addition to) to any other sentence

18   you receive." Defendant signed the appearance bond below a statement acknowledging that he

19   was "aware of the penalties and sanctions set forth above."

20             f.       On April 6, 2021, Defendant signed a plea agreement in which he agreed to

21   plead guilty to the first count of the indictment (18 U.S.C. § 1951) and the Government agreed to

22   dismiss the second count.

23

24

g.      On May 26, 2021, Defendant appeared before a District Court judge in the District of Nevada and entered a guilty plea pursuant to the written plea agreement as to the § 1951 charge of the indictment.

h.      On October 6, 2021, a sentencing hearing was held in case no 2:19-cr-00313-GMN-NJK. The sentencing hearing was continued and is currently set for January 5, 2022.

### *Background Regarding the Paycheck Protection Program*

i.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and is designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietorships for job retention and certain other expenses, through a program referred to as the Paycheck protection Program ("PPP"). Subsequent legislation provided additional funding for the PPP and extended its duration. Businesses and eligible individuals could apply for PPP loans through May 31, 2021.

j.      In order to obtain a PPP loan, a qualifying business, independent contractor/self-employed individual, or sole proprietorship was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the applicant (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. Applicants who did not have employees and who filed an IRS Form 1040, Schedule C could

1  report gross income instead of payroll. These figures were used to calculate the amount of

2  money the applicant was eligible to receive under the PPP. In addition, businesses or sole

3  proprietorships applying for a PPP loan were required to provide documentation showing their

4  eligibility and qualifying payroll amount.

5          k.      A participating financial institution (the lender) processed a PPP loan

6  application. If the lender approved a PPP loan application, it funded the PPP loan using its own

7  monies, which the Small Business Administration ("SBA") guaranteed 100%. If the lender made

8  a PPP loan to the applicant, the SBA paid the lender a processing fee, which was calculated

9  based on the amount of the loan. The lender transmitted information to the Small Business

10  Administration in the course of processing the loan data from the application, including

11  information about the borrower, the total amount of the loan, and the listed number of

12  employees. The SBA oversees the PPP, which has authority over all loans. Over 5,000 lending

13  institutions, mostly banks and credit unions, have participated in the PPP.

14          l.      The business or individual receiving the PPP loan proceeds must spend the

15  funds on certain permissible expenses, such as payroll costs, interest on mortgages, rent, and

16  utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the

17  loan proceeds are spent on permissible expense items within a designated period of time and uses

18  a specified portion of the PPP loan proceeds on payroll expenses. When a PPP loan is forgiven,

19  the SBA pays the lender the amount of the forgiven interest and principal.

20         ***Background Regarding the Economic Injury Disaster Loan Program***

21          m.      The Economic Injury Disaster Loan ("EIDL") Program is a SBA program

22  that provides low-interest financing to small businesses, renters, and homeowners in regions

23  affected by declared disasters.

24

1    n.    Another source of relief provided by the CARES Act was the

2  authorization for the SBA to provide EIDLs of up to $2 million to eligible small businesses

3  experiencing substantial financial disruption due to the COVID-19 pandemic.  In addition, the

4  CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within

5  three days of applying for an EIDL.  The amount of the advance was determined by the number

6  of employees that the applicant certified it had.  The advances did not have to be repaid.

7    o.    In order to obtain an EIDL and advance, a qualifying business is required

8  to submit an application to the SBA and provide information about its operations, such as the

9  number of employees, gross revenues for the 12-month period preceding the disaster, and cost

10  of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for COVID-

11  19 relief, the 12-month period was that preceding January 31, 2020.  The applicant must also

12  certify that all the information in the application is true and correct to the best of the applicant's

13  knowledge.

14    p.    EIDL applications are submitted directly to the SBA and processed by the

15  agency with support from a government contractor, Rapid Finance, via a server in Des Moines,

16  Iowa.  The amount of the loan, if the application was approved, was determined based, in part,

17  on the information provided by the application about employment, revenue, and cost of goods,

18  as described above.  Any funds issued under an EIDL or advance are issued directly by the

19  SBA.  EIDL funds can be used for payroll expenses, sick leave, production costs, and business

20  obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan

21  under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

22                              ***Defendant's Scheme to Defraud***

23    q.    Beginning in or around April 8, 2020 and continuing until in or around

24  July 12, 2021, Defendant devised, intended to devise, and participated in a scheme and artifice

11

1  to defraud the SBA and Institution 1 and to obtain money and property by means of materially

2  false and fraudulent pretenses, and promises, as further described below.

3  *Purpose of the Scheme to Defraud*

4  r.      It was the purpose of the scheme for Defendant to unjustly enrich himself

5  by fraudulently obtaining EIDL and PPP loan proceeds.

6  *Manner and Means of the Scheme to Defraud*

7  s.      It was part of the scheme that from on or about April 8, 2020 through until

8  at least July 12, 2021, Defendant submitted at least four fraudulent applications for EIDL funds

9  and at least one fraudulent application for a PPP loan. Defendant submitted these applications

10  electronically from Clark County, Nevada, and in doing so caused wire communications that

11  traveled outside of Nevada. In order to qualify for these loans, Defendant submitted materially

12  false and fraudulent information, including that he was the sole proprietor of several companies

13  which did not in fact exist, false revenue amounts for each of those non-existent companies,

14  and—for the EIDL applications—a false number of employees of those non-existent companies.

15  In each of these five applications, Defendant falsely certified that he was not presently under

16  indictment for felony charges. These applications are summarized in the table below.

| Date | Applicant Company | Type of Business | Gross Revenues | Number of Employees | Lender | Type of Loan Sought |
|------|------|------|------|------|------|------|
| April 8, 2020 | Sec inc. | Lawn & Garden | $100,000 | 10 | SBA | EIDL |
| October 7, 2020 | Keyawn Cook | Limousine and Transportation | $35,000 | 9 | SBA | EIDL |
| December 31, 2020 | KC Tech | Daycare | $45,000 | 10 | SBA | EIDL |
| April 7, 2021 | Cutzbykay | Barber Shop | $50,000 | N/A | Institution 1 | PPP |
| July 12, 2021 | Keyawn Cook | Advertising Sales | $17,000 | 12 | SBA | EIDL |

t.      Defendant also provided fake documentation in order to support his April 7, 2021 PPP loan application: Defendant attached a falsified Chime Spending Account Statement which purported to show that he received deposits totaling $5,800 during February 2020. However, this account statement was not real; Defendant had no activity in this account prior to December 2020.

u.      The PPP loan was approved. On May 20, 2021, Institution 1 deposited $10,415 into a Chime Spending account controlled by Defendant. The SBA paid Institution 1 a $2,500 processing fee.

v.      Defendant applied for the PPP loan to be forgiven, so that he would not be required to pay back Institution 1. The loan was forgiven. As a result, the SBA paid Institution 1 $10,415 for the forgiven principal loan amount and $52.07 for the forgiven interest amount.

w.      With respect to the EIDL applications, Defendant intended to obtain at least $50,000 through the April 8, 2020 application, $10,000 through the October 7, 2020 application, $10,000 through the December 31, 2020 application, and $24,000 through the July 12, 2021 application, for a total intended loss of at least $94,000. The SBA did not, however, fund these loans.

x.      The total loss, including both actual and intended loss, for Defendant's scheme to defraud is $106,967.07.

y.      All of the above took place in the State and Federal District of Nevada and elsewhere.

## VI. SENTENCING FACTORS

13.     <u>Discretionary Nature of Sentencing Guidelines</u>: Defendant understands that in determining defendant's sentence, the district court is required to calculate the applicable sentencing guidelines range and to consider that range, possible departures under the sentencing

1   guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant

2   understands that the sentencing guidelines are advisory only, that defendant cannot have any

3   expectation of receiving a sentence within the calculated sentencing guidelines range, and that

4   after considering the sentencing guidelines and the other § 3553(a) factors, the district court will

5   be free to exercise its discretion to impose any sentence it finds up to the maximum set by statute

6   for the crime of conviction.

7     14. Offense Level Calculations: The parties jointly agree and stipulate that, in

8   calculating Defendant's advisory guidelines sentencing range, the Court should use the following

9   base offense level and adjustments;  acknowledge that these stipulations do not bind the district

10   court; and agree that they will not seek to apply or advocate for the use of any other base offense

11   level(s) or any other specific offense characteristics, enhancements, or reductions in calculating

12   the advisory guidelines range:

13     Base Offense Level [USSG § 2B1.1(a)(1)]:  7

14     Intended Loss More Than $95,000 [USSG § 2B1.1(b)(1)(E)]: +8

15     Commission of Offense While on Release [USSG § 3C1.3]: +3

16      Adjusted Offense Level:  18

17     15. Reduction for Acceptance of Responsibility: Under USSG § 3E1.1(a), the USAO

18   will recommend that defendant receive a two-level downward adjustment for acceptance of

19   responsibility unless defendant (a) fails to truthfully admit facts establishing a factual basis for the

20   guilty plea when defendant enters the plea; (b) fails to truthfully admit facts establishing the

21   amount of restitution owed when defendant enters the guilty plea; (c) fails to truthfully admit

22   facts establishing the forfeiture allegations when defendant enters the guilty plea; (d) provides

23   false or misleading information to the USAO, the Court, Pretrial Services, or the Probation

24   Office; (e) denies involvement in the offense or provides conflicting statements regarding

1   defendant's involvement or falsely denies or frivolously contests conduct relevant to the offense;

2   (f) attempts to withdraw defendant's guilty plea; (g) commits or attempts to commit any crime;

3   (h) fails to appear in court; or (i) violates the conditions of pretrial release.

4          Under USSG § 3E1.1(b), if the district court determines that defendant's total offense

5   level before operation of § 3E1.1(a) is 16 or higher, and if the USAO recommends a two-level

6   downward adjustment pursuant to the preceding paragraph, the USAO will move for an

7   additional one-level downward adjustment for acceptance of responsibility before sentencing

8   because defendant communicated defendant's decision to plead guilty in a timely manner that

9   enabled the USAO to avoid preparing for trial and to efficiently allocate its resources.

10        16.    Criminal History Category: Defendant acknowledges that the district court may

11   base defendant's sentence in part on defendant's criminal record or criminal history. The district

12   court will determine defendant's criminal history category under the sentencing guidelines.

13        17.    Additional Sentencing Information: The stipulated sentencing guidelines

14   calculations are based on information now known to the parties. Defendant understands that

15   both defendant and the USAO are free to (a) supplement the facts in this agreement by supplying

16   relevant information to the U.S. Probation and Pretrial Services Offices and the district court

17   regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or

18   mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the

19   district court's sentencing guidelines calculations and determination of sentence. While this

20   paragraph permits both the USAO and defendant to submit full and complete factual

21   information to the U.S. Probation and Pretrial Services Offices and the district court, even if that

22   factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

23   paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed

24

1  to in this agreement. Good faith efforts to provide truthful information or to correct factual

2  misstatements shall not be grounds for defendant to withdraw defendant's guilty plea.

3       Defendant acknowledges that the U.S. Probation Office may calculate the sentencing

4  guidelines differently and may rely on additional information it obtains through its investigation.

5  Defendant also acknowledges that the district court may rely on this and other additional

6  information as it calculates the sentencing guidelines range and makes other sentencing

7  determinations, and the district court's reliance on such information shall not be grounds for

8  defendant to withdraw defendant's guilty plea.

9                    **VII. POSITIONS REGARDING SENTENCING**

10       18.    The USAO will recommend that the district court sentence defendant no higher

11  than the low end of the advisory guideline range as determined by the district court. Defendant

12  may argue for a downward variance pursuant to 18 U.S.C. § 3553.

13       19.    Defendant acknowledges that the district court does not have to follow the

14  recommendation of either party.

15       20.    Notwithstanding its agreement to recommend a sentence as described above, the

16  USAO reserves its right to defend any lawfully imposed sentence on appeal or in any post-

17  conviction litigation.

18       21.    If defendant commits any act that results in the Court finding that defendant is

19  not entitled to a downward adjustment for acceptance of responsibility, the USAO is entitled to

20  argue for any sentence it deems appropriate under 18 U.S.C. § 3553(a).  In any such event,

21  Defendant remains bound by the provisions of this agreement and shall not have the right to

22  withdraw defendant's guilty plea.

23

24

## VIII. WAIVER OF CONSTITUTIONAL RIGHTS

22.    Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty;

b.    The right to a speedy and public trial by jury;

c.    The right to be represented by counsel—and if necessary have the court appoint counsel—at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel—and if necessary have the court appoint counsel—at every other stage of the proceeding;

d.    The right to be presumed innocent and to have the burden of proof placed on the USAO to prove defendant guilty beyond a reasonable doubt;

e.    The right to confront and cross-examine witnesses against defendant;

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify;

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant; and

h.    The right to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and any other pretrial motions that have been filed or could be filed.

## IX. WAIVER OF APPELLATE RIGHTS

23.    Waiver of Appellate Rights: Defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the district court; (b) the right to appeal the manner in which the district court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal

1   any other aspect of the conviction, including but not limited to the constitutionality of the statute

2   of conviction; any other aspect of the sentence; and any order of restitution or forfeiture.

3       24.     Defendant reserves only the right to appeal any portion of the sentence that is an

4   upward departure or variance from the applicable Sentencing Guideline range as determined by

5   the district court.

6       25.     Waiver of Post-Conviction Rights: Defendant also knowingly and expressly

7   waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's

8   conviction, sentence, and the procedure by which the district court adjudicated guilt and

9   imposed sentence, except non-waivable claims of ineffective assistance of counsel.

10      26.     Preservation of Evidence: Defendant acknowledges that the USAO and the

11  agencies investigating this case are not obligated or required to preserve any evidence obtained in

12  the investigation of this case.

13

14  ## X. RESULT OF WITHDRAWAL OF GUILTY PLEA OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTION

15      27.     Consequence of withdrawal of guilty plea: Defendant agrees that if, after entering

16  a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in

17  withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into

18  this agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under

19  this agreement and (b) should the USAO choose to pursue any charge that was either dismissed

20  or not filed as a result of this agreement, then (i) any applicable statute of limitations will be

21  tolled between the date of defendant's signing of this agreement and the filing commencing any

22  such action; and (ii) defendant waives and gives up all defenses based on the statute of

23  limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such

24

1   action, except to the extent that such defenses existed as of the date of defendant's signing this

2   agreement.

3        28.   Consequence of vacatur, reversal, or set-aside: Defendant agrees that if

4   defendant's conviction is vacated, reversed, or set aside, both the USAO and defendant will be

5   released from all their obligations under this agreement, except that, should the USAO choose to

6   pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any

7   applicable statute of limitations will be tolled between the date of defendant's signing of this

8   agreement and the filing commencing any such action; and (ii) defendant waives and gives up all

9   defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

10   trial claim with respect to any such action, except to the extent that such defenses existed as of

11   the date of defendant's signing this agreement.

12                  **XI. BREACH OF AGREEMENT**

13        29.   Defendant agrees that if, at any time after this agreement becomes effective,

14   defendant knowingly violates or fails to perform any of defendant's obligations under this

15   agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's

16   obligations are material, a single breach of this agreement is sufficient for the USAO to declare a

17   breach, and defendant shall not be deemed to have cured a breach without the express agreement

18   of the USAO in writing. If the USAO declares this agreement breached, and the district court

19   finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea

20   pursuant to this agreement, defendant will remain bound by the provisions of this agreement and

21   will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its

22   obligations under this agreement.

23

24

## XII. COURT AND UNITED STATES PROBATION
## AND PRETRIAL SERVICES OFFICE NOT PARTIES

30.     Defendant understands that the Court and the U.S. Probation and Pretrial

Services Office are not parties to this agreement and need not accept any of the USAO's

sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.     Defendant understands that both defendant and the USAO are free to argue on

appeal and collateral review that the district court's sentencing guidelines calculations and the

sentence it chooses to impose are not error.

32.     Defendant understands that even if the district court ignores any sentencing

recommendation, finds facts or reaches conclusions different from those agreed to by the parties,

or imposes any sentence up to the maximum established by statute, defendant cannot, for that

reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all

defendant's obligations under this agreement. Defendant understands that no one—not the

prosecutor, defendant's attorney, or the Court—can make a binding prediction or promise

regarding the sentence defendant will receive, except that it will be within the statutory

maximum.

## XIII. ADDITIONAL ACKNOWLEDGMENTS

33.     Defendant acknowledges that:

a.     Defendant read this agreement and defendant understands its terms and

conditions.

b.     Defendant had adequate time to discuss this case, the evidence, and this

agreement with defendant's attorney.

c.     Defendant carefully and thoroughly discussed all terms of this agreement

with defendant's attorney.

d.      Defendant understands the terms of this agreement and voluntarily agrees to those terms.

e.      Defendant has discussed with defendant's attorney the following: the evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. 3553(a); the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

f.      The representations contained in this agreement are true and correct, including the factual basis for defendant's offense set forth in this agreement.

g.      Defendant was not under the influence of any alcohol, drug, or medicine that would impair defendant's ability to understand the agreement when defendant considered signing this agreement and when defendant signed it.

34.     Defendant understands that defendant alone decides whether to plead guilty or go to trial, and acknowledges that defendant has decided to enter defendant's guilty plea knowing of the charges brought against defendant, defendant's possible defenses, and the benefits and possible detriments of proceeding to trial.

35.     Defendant understands that no promises, understandings, or agreements other than those set forth in this agreement have been made or implied by defendant, defendant's attorney, or the USAO, and no additional promises, agreements, or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the district court.

36.     Defendant acknowledges that defendant decided to plead guilty voluntarily and that no one threatened, coerced, or forced defendant to enter into this agreement.

37.     Defendant is satisfied with the representation of defendant's attorney, and defendant is pleading guilty because defendant is guilty of the charges and chooses to take advantage of the promises set forth in this agreement and for no other reason.

### XIV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

38.     The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF NEVADA

CHRISTOPHER CHIOU
Acting United States Attorney

_____          1/31/22          3/9/22
JESSICA OLIVA                          Date
Assistant United States Attorney

_____          1/18/22   3/9/22
KEYAWN LLOYD COOK, JR.                  Date
Defendant

_____          1/31/2022   3/9/22
REBECCA LEVY                           Date
Attorney for Defendant COOK

22

**EXHIBIT A**
**Form of One-Count Information**
**Charging Defendant Cook**

**THE UNITED STATES ATTORNEY CHARGES THAT**

<u>**Background Allegations**</u>

At all times relevant to the Information, unless otherwise stated:

1.      Defendant KEYAWN LLOYD COOK, JR. ("COOK") was a United States citizen, residing in Las Vegas, Nevada.

2.      Defendant COOK was indicted in the federal District of Nevada on December 4, 2019 for felony charges alleging violations of Attempted Interference with Commerce by Robbery (18 U.S.C. § 1951) and Brandishing a Firearm in Furtherance of the Crime of Violence (18 U.S.C. § 924(c)(1)(A)(ii)) in case no. 2:19-CR-00313-GMN-NJK. Defendant COOK entered a guilty plea to the § 1951 charge on May 26, 2021.

3.      Institution 1 was a community development institution headquartered in Bedford, Texas. Institution 1 participated as a lender in the Paycheck Protection Program.

*Background Regarding the Paycheck Protection Program*

4.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and is designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietorships for job retention and certain other expenses, through a program referred to as the Paycheck protection Program ("PPP"). Subsequent legislation provided additional funding for the PPP and extended its duration. Businesses and eligible individuals could apply for PPP loans through May 31, 2021.

5.      In order to obtain a PPP loan, a qualifying business, independent contractor/self-employed individual, or sole proprietorship was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the applicant (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. (Applicants who did not have employees and who filed an IRS Form 1040, Schedule C could report gross income instead of payroll.) These figures were used to calculate the amount of money the applicant was eligible to receive under the PPP. In addition, businesses or sole proprietorships applying for a PPP loan were required to provide documentation showing their eligibility and qualifying payroll amount.

6.      A participating financial institution (the lender) processed a PPP loan application. If the lender approved a PPP loan application, it funded the PPP loan using its own monies, which the Small Business Administration ("SBA") guaranteed 100%. If the lender made a PPP loan to the applicant, the SBA paid the lender a processing fee, which was calculated based on the amount of the loan. The lender transmitted information to the Small Business Administration in the course of processing the loan data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees. The SBA oversees the PPP, which has authority over all loans. Over 5,000 lending institutions, mostly banks and credit unions, have participated in the PPP.

7.      The business or individual receiving the PPP loan proceeds must spend the funds on certain permissible expenses, such as payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the loan

24

1   proceeds are spent on permissible expense items within a designated period of time and uses a

2   specified portion of the PPP loan proceeds on payroll expenses. When a PPP loan is forgiven,

3   the SBA pays the lender the amount of the forgiven interest and principal.

4   *Background Regarding the Economic Injury Disaster Loan Program*

5       8.    The Economic Injury Disaster Loan ("EIDL") Program is a SBA program that

6   provides low-interest financing to small businesses, renters, and homeowners in regions affected

7   by declared disasters.

8       9.    Another source of relief provided by the CARES Act was the authorization for

9   the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing

10   substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act

11   authorized the SBA to issue advances of up to $10,000 to small businesses within three days of

12   applying for an EIDL. The amount of the advance was determined by the number of

13   employees that the applicant certified it had. The advances did not have to be repaid.

14       10.    In order to obtain an EIDL and advance, a qualifying business is required to

15   submit an application to the SBA and provide information about its operations, such as the

16   number of employees, gross revenues for the 12-month period preceding the disaster, and cost

17   of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-

18   19 relief, the 12-month period was that preceding January 31, 2020. The applicant must also

19   certify that all the information in the application is true and correct to the best of the applicant's

20   knowledge.

21       11.    EIDL applications are submitted directly to the SBA and processed by the agency

22   with support from a government contractor, Rapid Finance, through a server in Des Moines,

23   Iowa. The amount of the loan, if the application was approved, was determined based, in part,

24   on the information provided by the application about employment, revenue, and cost of goods,

1    as described above.  Any funds issued under an EIDL or advance are issued directly by the

2    SBA.  EIDL funds can be used for payroll expenses, sick leave, production costs, and business

3    obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan

4    under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

**COUNT ONE**
**Wire Fraud**
**(18 U.S.C §§ 1343 and 3147)**

**Scheme to Defraud**

8    12.    Beginning in or around April 8, 2020 and continuing until in or around July 12,

9    2021, within the state and federal district of Nevada and elsewhere,

KEYAWN LLOYD COOK, JR.

11    defendant herein, while on pretrial release in *United States v. Keyawn Lloyd Cook, Jr.*, Case No.

12    2:19-CR-00313-GMN-NJK, and having been notified of the potential effect of committing a

13    felony offense while on pretrial release, devised, intended to devise, and participated in a scheme

14    and artifice to defraud the SBA and Institution 1 and to obtain money and property by means of

15    materially false and fraudulent pretenses, representations, and promises.

**Purpose of the Scheme to Defraud**

17    13.    It was the purpose of the scheme for COOK to unjustly enrich himself by

18    fraudulently obtaining EIDL and PPP loan proceeds by means of false and fraudulent pretenses,

19    representations, and promises.

**Manner and Means of the Scheme to Defraud**

21    14.    It was part of the scheme that from on or about April 8, 2020 through until at least

22    July 12, 2021, COOK submitted at least four applications for EIDL funds and at least one

23    application for a PPP loan. COOK submitted these applications electronically from Clark

24    County, Nevada, causing wire communications to be transmitted across state lines. In order to

26

1  qualify for these loans, COOK made and cause to be made materially false and fraudulent

2  statements, including that he was the sole proprietor of several companies which did not in fact

3  exist, false revenue amounts for each of those non-existent companies, and—for the EIDL

4  applications—a false number of employees of those non-existent companies. In each of these five

5  applications, COOK falsely certified that he was not presently under indictment.

6        15.    COOK also provided fake documentation in order to support the April 7, 2021

7  PPP loan application: COOK attached a falsified Chime Spending Account Statement which

8  purported to show that he received deposits totaling $5,800 during February 2020. However, this

9  account statement was not real; COOK had no activity in this account prior to December 2020.

10        16.    The PPP loan was approved. On May 20, 2021, Institution 1 deposited $10,415 as

11  the proceeds of this loan into a Chime Spending account controlled by COOK.

12        17.    With respect to the EIDL applications, Defendant intended to obtain at least

13  $50,000 through an April 8, 2020 application, $10,000 through an October 7, 2020 application,

14  $10,000 through a December 31, 2020 application, and $24,000 through a July 12, 2021

15  application. The SBA did not, however, fund these loans.

16  **The Charged Wire Communication**

17        18.    On or about April 8, 2020, in the State and District of Nevada and elsewhere,

18  COOK, for the purpose of executing the scheme and artifice to defraud, transmitted and caused

19  to be transmitted by means of wire communication in interstate commerce, writings, signs,

20  signals, pictures, and sounds, that is, an Economic Injury Disaster Loan application

21  electronically transmitted by COOK from Nevada to the SBA outside of Nevada, in violation of

22  Title 18, United States Code, Sections 1343 and 3147.

23

24