JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
JESSICA OLIVA
KIMBERLY FRAYN
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Fax: (702) 388-6418
jessica.oliva@usdoj.gov
kimberly.frayn@usdoj.gov
*Attorneys for the United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:22-cr-00027-GMN-NJK |
| Plaintiff, | |
| v. | **Government's Sentencing Memorandum** |
| KEYAWN LLOYD COOK, JR., | |
| Defendant. | |

## INTRODUCTION

Over a two-year plus span, defendant Keyawn Lloyd Cook, Jr. repeatedly attempted to rob and defraud money that was not his.

On the morning of July 16, 2019, defendant Keyawn Lloyd Cook, Jr. brandished a loaded gun at a security guard at a Bank of America branch in Las Vegas in an attempt to rob money being delivered by a Loomis armored car employee. Case no. 2:19-cr-00313-GMN-NJK, ECF Nos. 47 (Plea Agreement) at 6-7 and 53-1 (Impounded Firearm Information Report). Defendant was caught by law enforcement, charged federally for that

1    crime in case no. 2:19-cr-00313-GMN-NJK, and ordered released on pretrial supervision in

2    December 2019. ECF No. 7 (Plea Agreement) at 8.

3           Less than four months later, while on pre-trial release in his attempted robbery case,

4    Defendant devised another scheme to take money that was not his. This time, instead of

5    using a gun to try robbing a bank, Defendant used a computer to try defrauding COVID-19

6    pandemic relief funds from the Small Business Administration and from a Paycheck

7    Protection Program lender. Over the course of the next 15 months, Defendant engaged in

8    this scheme over and over again, submitting at least five separate fraudulent loan

9    applications in an attempt to obtain over $100,000 in COVID-19 pandemic relief funds to

10   which he was not entitled.

11          On March 9, 2022, Defendant was sentenced to 60 months in custody in his

12   attempted robbery case. Also on March 9, Defendant pleaded guilty in this case to one

13   count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 3147. ECF No. 9.

14          A low-end, 21-month custodial term, to run consecutive to Defendant's 60-month

15   term in case no. 2:19-cr-00313-GMN-NJK, is a reasonable sentence and is not greater than

16   necessary under the sentencing factors of 18 U.S.C. § 3553(a). The Court should order

17   restitution in the amount of $12,967.07. Presentence Investigation Report ("PSR") ¶ 80.

18   The Court should also sentence Defendant to a three-year term of supervised release, to run

19   concurrently with the three-year term imposed in the attempted robbery case, with the

20   special conditions outlined on page 20 of the PSR and the additional special conditions of

21   Access to Financial Information and Debt Obligation. This additional supervisory term

22   will, in part, allow United States Probation to more closely monitor Defendant's finances,

23   ensure that his restitution is paid, and discourage him from committing any new fraud

24   while on supervision.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   The Defendant's Guidelines Range is 21 to 27 Months.**

Probation and the parties all agree that Defendant's Guidelines Range is 21 to 27 months, based on a CHC of II and an offense level calculation of 15 after a three-level reduction for acceptance of responsibility[1]:

|  |  | USSG |
|---|---|---|
| Base Offense Level | 7 | § 2B1.1(a)(1) |
| Intended Loss Greater than $95,000 | +8 | § 2B1.1(b)(1)(E) |
| Commission of Offense While on Release | +3 | § 3C1.3 |
| **Adjusted Offense Level** | **18** | |
| Contingent Reduction for AOR | -3 | § 3E1.1(a) and (b) |
| **Total Offense Level** | **15** | |

PSR ¶¶ 37-38 (CHC calculation)[2]; PSR ¶¶ 24-34 (offense level calculation); ECF No. 7 at 14-15 (offense level calculation).

**II.   Section 3553(a) Factors Support a Low-End Sentence of 21 Months of Custody.**

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). Further, under 18 U.S.C. § 3147, a sentence

---

[1] Although paragraph 4 of the PSR might be read to suggest the Government will seek a four offense level reduction for acceptance of responsibility, as explained in paragraphs 32-33, this reduction will in fact consist of a total of three levels under USSG § 3E1.1: two levels under USSG § 3E1.1(a) for clear acceptance of responsibility, and a third level under USSG § 3E1.1(b) based on Defendant's timely notifying authorities of his intent to enter a guilty plea.

[2] The Government is unaware of any objection by Defendant to Probation's calculation.

of imprisonment must be imposed in addition to the sentence for the underlying offense and must run consecutively to any other sentence of imprisonment. USSG § 3C1.3 App. n.1. As a result, the Court should specify the portion of the sentence attributable to the underlying offense and the portion attributable to the § 3147 enhancement for committing the offense while on pretrial release, and the latter must run consecutive to any other sentence. *Id.*

Here, Defendant's history and characteristics, the nature and circumstances of the offense, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant, all factor in favor of a low-end 21-month sentence. 18 U.S.C. § 353(a)(1) and (a)(2)(A), (B), and (C). The Government agrees with Probation that 3 months of Defendant's sentence should be attributed to the § 3147 portion of Defendant's sentence. PSR at 18.[3] The entire low-end, 21-month sentence should run consecutive to Defendant's sentence in case no. 2:19-cr-00313-GMN-NJK.

### A. Defendant's Repeated Commission of Pandemic Relief Fraud While on Pretrial Release Supports a 21-Month Sentence.

When he was released pretrial in his robbery case, Defendant was afforded the opportunity to demonstrate to the Court that he had learned from his actions and was committed to leading a law-abiding lifestyle. Defendant rejected this opportunity out of hand. Instead, Defendant elected to take advantage of the global COVID-19 pandemic to create and engage in a new criminal scheme, submitting fraudulent applications seeking

---

[3] Probation recommends a higher total sentence of 24 months, as opposed to the total sentence of 21 months argued for by the Government. *See* PSR at 18.

over $100,000 in COVID-19 relief funds over the course of 15 months. This conduct demonstrates that a low-end, 21-month sentence is necessary—and not greater than necessary—to reflect the history and characteristics of the defendant and the nature and circumstances of the offense, and to protect the public from further crimes of the defendant and deter future criminal conduct. 18 U.S.C. § 3553(a)(1) and (2)(B) and (C).

Defendant was charged federally in case no. 2:19-cr-00313-GMN-NJK and ordered released subject to pretrial supervision in December 2019. ECF No 7 at 8. Defendant's release conditions included the condition that he must not violate federal, state, or local law while on release. *Id.* Defendant's mother, Cheyneitha Gray, was sworn as his third-party custodian. ECF No. 13 (Appearance Bond) in case no. 2:19-cr-00313 at 3. Defendant was advised in writing that committing a federal felony offense while on release is punishable by an additional prison term of not more than 10 years. *Id.* at 6. Defendant signed an acknowledgement that he was aware of the conditions of release and promised to obey all of those conditions. *Id.*

Defendant did not, however, comply with his conditions of release. Instead, over the course of 15 months, Defendant developed and repeatedly executed a wire fraud scheme, in which he attempted to defraud the federal government of more than $100,000 in COVID-19 pandemic relief funds.

On April 8, 2020—less than 4 months after being released on pretrial supervision— Defendant submitted an electronic application to the Small Business Administration ("SBA") for Economic Injury Disaster Loan ("EIDL") Program funds. ECF No. 7 at 12. Through the CARES Act, Congress authorized the SBA to provide low-interest loans to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic, including advances of up to $10,000 which did not have to be repaid. *Id.* at 11.

In his April 8, 2020 application, Defendant claimed to own a lawn and garden business with 10 employees and gross revenues of $100,000, intending to obtain at least $50,000 in EIDL funds. *Id.* at 12. In fact, Defendant had no such business, no such employees, and no such revenue. *Id.* Defendant's application was denied. *Id.* at 13.

Defendant remained undeterred. Approximately 6 months later, on October 7, 2020, Defendant again tried to defraud the SBA by submitting another fraudulent application for EIDL funds, this time claiming to employ 9 people at a limousine and transportation company. ECF No 7 at 12. He was unsuccessful. *Id.* at 13. Approximately two months later, in December 2020, Defendant submitted yet another fraudulent application for pandemic relief funds, this time pretending to be the owner of a daycare with ten employees. *Id.* at 12. His application was again denied. *Id.* at 13.

On April 7, 2021—the day after signing a plea agreement in his attempted robbery case, and while still on the same conditions of pretrial release—Defendant submitted a Paycheck Protection Program ("PPP") loan application to a participating lender. ECF No 7 at 12. The PPP provided forgivable loans to small businesses and sole proprietors whose businesses were suffering as a result of the COVID-19 pandemic. *Id.* at 9-10. In this application, defendant fraudulently claimed to run a barber shop business under the name Cutzbykay with gross revenues of $50,000. *Id.* at 12. Defendant uploaded a fake bank account statement in support of this application, claiming to show he received $5,800 in deposits during February 2020, when, in reality, Defendant had no activity in this account prior to December 2020. *Id.* at 13. Defendant was successful in this execution of his scheme: the lender paid Defendant $10,415 in loan proceeds, and Defendant later applied for and received loan forgiveness. Absent law enforcement's intervention, Defendant

would have gotten to keep the $10,415 in pandemic relief funds he defrauded from the lender without any obligation to pay the lender back. *Id.*

On July 12, 2021, approximately a month and a half after entering a guilty plea in his attempted robbery case and prior to sentencing in that case, Defendant submitted yet another fraudulent EIDL application, this time claiming to employ 12 people at an advertising sales company. ECF No 7 at 12. This application was unsuccessful. *Id.* at 13.

Defendant committed covid relief fraud over and over in spite of being on pretrial release with the express condition that he not violate federal, state, or local law, and in spite of signing a plea agreement with the Government to resolve his attempted robbery charges in which he expressly agreed that he would not commit a new federal, state, or local crime.

This was not a one-time mistake. Defendant executed this scheme on at least five occasions over the course of more than a year, with months between each application. Nor was this a crime of need: Defendant had a job as an ID Host at Hakkasan Nightclub from approximately November 2019 through November 2020, and he was employed at Fox Rent-A-Car from November 2021 to March 2022. PSR ¶¶ 60-61. Defendant also received unemployment benefits from April 2020 through July 2021. PSR ¶ 63.

At his October 6, 2021 sentencing hearing in his robbery case, Defendant told the Court, "I know it was wrong, but people make mistakes and I have learned from my mistake. Like you said, I've been out for three years and that's long enough to know." ECF No. 67 in Case No. 2:19-cr-00313-GMN-NJK at 11 lines 21-23. Defendant's actions directly contradict his statements. While Defendant may have learned from his attempted robbery, he did not learn that he should stop committing crime. Defendant simply learned

1    to commit a new type of crime, which he most likely hoped would be more easily

2    concealed.

3            Accordingly, the history and characteristics of the defendant, the nature and

4    circumstances of his wire fraud scheme, as well as the need to protect the public from

5    further crimes of the defendant and to deter future criminal conduct, all demonstrate that a

6    low-end, 21-month sentence is necessary, and not greater than necessary, to meet the

7    § 3553(a) sentencing factors in this case. The Court should also order Defendant to pay

8    restitution in the amount of $12,967.07. PSR ¶¶ 80-81.

9            III.    **The Court Should Impose a Three-Year Term of Supervised Release with**
**the Special Conditions Recommended by Probation.**

10

11           The Government agrees with Probation's recommendation for a concurrent three-

12   year term of supervised release with the special conditions identified by Probation and for

13   the reasons identified in the PSR. PSR ¶¶ 90-91 and p.20.[4] The Court should also impose

14   the additional special conditions of supervision of Access to Financial Information and

15   Debt Obligation, because these additional conditions of supervision will further enable

16   Probation to monitor Defendant's financial status, deter him from committing new

17   financial crimes, and ensure that his restitution is paid.

18           In exercising broad discretion to fashion conditions of supervised release, "[a]

19   district judge may impose any supervised release conditions she deems appropriate." *United*

20   _____

21   [4] While Defendant has already been sentenced to a three-year term of supervised release in
     case no. 2:19-cr-00313-GMN-NJK, the Special Conditions in that case reflect Defendant's
22   history and characteristics and the nature and circumstances of the attempted robbery.
     Those conditions do not reflect the financial/fraudulent nature of the crime in this case nor
     the restitution Defendant owes in this case. As a result, the Court should sentence
23   Defendant to a concurrent term of supervision in this case which includes the Special
     Conditions of release specific to the nature and circumstances of Defendant's financial
24   fraud.

*States v. LaCoste*, 821 F.3d 1187, 1190 (9th Cir. 2016); *see also* 18 U.S.C. § 3583(d) ("The court shall order ... any other condition it considers to be appropriate.") The conditions, however must comport with the following three principles: (1) "the condition must be reasonably related to the nature and circumstances of the offense; the history and characteristics of the defendant; or the sentencing-related goals of deterrence, protection of the public, or rehabilitation"; (2) "the condition must be consistent with the Sentencing Commission's policy statements"; and (3) "the condition may involve no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release." *Id.* at 1190-1191 (internal quotation marks omitted); 18 U.S.C. §§ 3553(a)(1)-(2), 3583(d)(1)-(2). "[E]ven very broad conditions are reasonable if they are intended to promote the probationer's rehabilitation and to protect the public." *United States v. Bee*, 162 F.3d 1232, 1236 (9th Cir. 1998).

Here, a three-year term of supervised release would provide added deterrence against the defendant re-offending, while offering the structure and resources that Probation can provide to help him to re-integrate into the community. As outlined by Probation in the PSR, the special condition of Cognitive Behavioral Treatment will assist in ensuring Defendant becoming aware of inaccurate or negative thinking and addressing challenging situations in a more effective manner. PSR ¶ 90. The inclusion of a search and seizure condition which includes defendant's electronic communications and devices is further reasonably related to Defendant's history and characteristics as well as the nature and circumstances of the offense, because the Defendant conducted his COVID fraud scheme electronically. Moreover, such a search and seizure condition allows the Probation Officer to promote public safety through effective oversight of higher-risk defendants and by assisting with rehabilitation efforts. The condition may also deter criminal conduct and

permit a probation officer to intervene quickly when reasonable suspicion exists that a defendant has engaged in criminal conduct or otherwise violated a condition of supervision, a consideration all the more relevant to the facts and circumstances of this case, as Defendant committed the crime at issue while on federal supervision.

The Court should also impose the Special Conditions of Supervision of Access to Financial Information and Debt Obligation:

Access to Financial Information – You must provide the probation officer access to any requested financial information and authorize the release of any financial information. The probation office will share financial information with the U.S. Attorney's Office.

Debt Obligation – You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

The Access to Financial Information and Debt Obligation conditions are reasonably related to the nature and circumstances of the crime, as Defendant is convicted in this case of committing pandemic relief loan fraud. They are further reasonably related to the history and characteristics of the defendant, as well as deterrence and protecting the public, because both of Defendant's federal convictions revolve around his efforts to steal and defraud money that was not his. These Special Conditions can help the Probation Officer set the appropriate collection parameters for monetary conditions, deter and detect economic crimes, verify and monitor self-employment, or assist disorganized, impulsive defendants to gain control of their financial situation. These conditions also enable the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

The Special Conditions identified by Probation, as well as the additional conditions of Access to Financial Information and Debt Obligation, would assist Defendant in becoming a productive member of society, reduce the possibility of him reoffending, and help protect the community from potential future criminal behavior in which he may engage. *See* PSR ¶ 91. Moreover, imposing this supervisory term concurrent to the supervisory term in case no. 2:19-cr-00313-GMN-NJK will also allow Probation to more closely monitor Defendant's finances and ensure that his restitution is paid. Accordingly, the Government joins Probation's recommendation that the Court sentence Defendant to a three-year term of Supervised Release, with the Special Conditions outlined on page 20 of the PSR and the additional Special Conditions of Access to Financial Information and Debt Obligation.

///

///

///

///

///

///

///

///

///

///

///

///

///

1

## **CONCLUSION**

2          As summarized by Probation: "The Defendant's two felony convictions revolve

3    around attempts to obtain large sums of money, and it appears Cook is willing to go about

4    getting money in any way possible without regard to the law." PSR ¶ 87. The Court should

5    sentence Defendant to a low-end, 21-month term of custody consecutive to his sentence in

6    2:19-cr-00313-GMN-NJK. The Court should attribute 3 of those 21 months to the

7    sentencing enhancement under 18 U.S.C. § 3147. The Court should order restitution in the

8    amount of $12,967.07. The Court should further sentence Defendant to a three-year term of

9    supervised release with the Special Conditions outlined in the PSR and the additional

10   Special Conditions of Access to Financial Obligation and Debt Obligation, for the reasons

11   outlined in the PSR and above.

12          Respectfully submitted 1st day of June, 2022.

13

14                                                    JASON M. FRIERSON
                                                      United States Attorney

15                                                    *s/ Jessica Oliva*
                                                      JESSICA OLIVA

16                                                    KIMBERLY FRAYN
                                                      Assistant United States Attorneys

17

18

19

20

21

22

23

24